UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS MANNION,                            Case No. 25-11344

     Plaintiff,                           Hon. F. Kay Behm
v.                                         United States District Judge

HENRY ELECTRIC, LLC and
KEVIN KUZA,

     Defendants.
_____ /

**OPINION AND ORDER ON MOTION FOR DEFAULT
JUDGMENT (ECF No. 18)**

I.   **PROCEDURAL HISTORY**

Plaintiff Thomas Mannion filed a complaint on May 7, 2025

against Defendants Henry Electric, LLC, and Kevin Kuza, alleging

breach of contract and several related torts connected to a contract for

sale of a custom electric bike.  ECF No. 1.  Plaintiff served the summons

and complaint upon Defendants on July 17, 2025.  *See* ECF No. 12,

PageID.53; ECF No. 13, PageID.54.

Fed. R. Civ. P. 12(a)(1) provides that a defendant must provide an

answer within twenty-one (21) days of being served with a summons

and complaint.  The deadline for Defendants to serve an answer or

1

otherwise respond to the complaint in this matter was August 7, 2025.

Mannion filed his requests for entries of default against Defendants on

August 8, 2025, which were entered that same day.  ECF Nos. 14, 15,

16, 17.  On August 11, 2025, Mannion moved for a default judgment

against Defendants.  ECF No. 18.  On January 28, 2026, the court held

a hearing on Plaintiff's motion at which Plaintiff's counsel appeared.

For the reasons set forth below, the court **GRANTS** Plaintiff's

Motion for Default Judgment as to Counts I, III, and V **IN PART**,

awards damages accordingly, otherwise **DENIES** the motion, and

closes the case.

## II.    FACTUAL BACKGROUND[1]

The facts here are straightforward.  Plaintiff Thomas Mannion

ordered a custom electric bicycle from Defendants Henry Electric, LLC

and Kevin Kuza.  In May 2022, Mannion paid Henry Electric $7,700 for

the bicycle, but the bicycle was never delivered.  In August 2022,

Plaintiff requested a refund, which Kuza, acting on behalf of Henry

Electric, agreed to.  In March 2023, Defendants provided a written

refund proposal stating that Plaintiff would be refunded $4,750.0 by

---

[1] On a motion for default judgment, the court takes these facts from the
Complaint and accepts them as true.  ECF No. 1, PageID.1-7.

April 25, 2023, with a $150 per day penalty accruing for any delay.  No refund has been paid in any amount.

Plaintiff says the $150 per day penalty was a new contract binding on Defendants, and that he is therefore entitled to $391,800 in actual damages and treble damages, plus attorney's fees.  ECF No. 18, PageID.80.

## III.   STANDARD OF REVIEW

"Entry of default and a default judgment are distinct events that require separate treatment." *Ramada Franchise Sys., Inc. v. Baroda Enters., LLC*, 220 F.R.D. 303, 304 (N.D. Ohio 2004) (internal citation omitted).  An entry of default is a prerequisite to a default judgment. Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  An entry of default "conclusively establishes every factual predicate of a claim for relief." *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citing *Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997)).  However, entry of a default does not establish damages.  *See Antoine v. Atlas Turner, Inc.*, 66 F.3d

3

105, 110 (6th Cir. 1995); *see also Kelley v. Carr*, 567 F. Supp. 831, 841

(W.D. Mich. 1983) ("A default judgment on well-pleaded allegations

establishes only defendant's liability; plaintiff must still establish the

extent of damages.").  Thus, the plaintiff is required to provide proof of

all damages sought in the complaint.  *See John E. Green Plumbing and*

*Heating Co., Inc. v. Turner Constr. Co.*, 742 F.2d 965, 968 (6th Cir.

1984) ("We recognize that the law 'does not require impossibilities'

when it comes to proof of damages, but it does require whatever 'degree

of certainty tha[t] the nature of the case admits.'") (internal citations

omitted).  Fed. R. Civ. P. 55(b)(2) allows courts to conduct hearings in

order to "determine the amount of damages" so it may effectuate a

judgment.

## IV.   ANALYSIS

### A.   Individual Liability

The court must first address an issue not squarely presented by

Plaintiff's motion for default judgment – whether Defendant Kevin

Kuza can be held liable under any of Plaintiff's theories.  Kuza is, by the

terms of Plaintiff's complaint – the owner and operator of Henry

Electric, LLC.  *See* ECF No. 1, PageID.4.

But Michigan law presumes that the corporate form will be respected. *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing *Seasword v. Hilti*, 449 Mich. 542 (1995)).  "This presumption, often referred to as a 'corporate veil,' may be pierced only where an otherwise separate corporate existence has been used to subvert justice or cause a result that is contrary to some overriding public policy." *EPLET, LLC v. DTE Pontiac N., LLC*, 984 F.3d 493, 499 (6th Cir. 2021) (citation omitted).  Piercing the corporate veil is an equitable remedy "sparingly invoked to cure certain injustices that would otherwise go unredressed." *Gallagher v. Persha*, 315 Mich. App. 647, 654 (2016).  "Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Servo Kinetics*, 475 F.3d at 798 (citing *Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 457 (1995)).

To determine whether the corporate entity was a "mere instrumentality" of an individual, courts consider, for example: whether the corporation is undercapitalized; whether separate books are kept;

5

whether there are separate finances for the corporation; whether the corporation is used for fraud or illegality; whether corporate formalities have been followed; and whether the corporation is a sham. *See GM Glob. Tech. Operations, LLC v. Quality Collision Parts, Inc.*, No. 23-13026, 2026 LX 87510, at *40 (E.D. Mich. Jan. 26, 2026); *Glenn v. TPI Petroleum, Inc.*, 305 Mich. App. 698, 716 (2014). Michigan courts have also considered the commingling of funds and the extent to which the shareholder controlled the decisions of the entity. *See Ryan Racing, LLC v. Gentilozzi*, 231 F. Supp. 3d 269, 277 (W.D. Mich. 2017) (citations omitted).

Plaintiff has not met his burden of proving that Henry Electric is an alter ego or mere instrumentality of Kuza, even taking his allegations as true. While the court accepts in this posture that Henry Electric fraudulently told Plaintiff he would be repaid his funds and that Kuza was its main and possibly sole shareholder controlling its decisions, there is no evidence that the corporation is undercapitalized, that its finances are inseparable from Kuza's personal finances, that Kuza or Henry Electric do not observe the corporate formalities, or that the operation is a sham (this single breach of contract notwithstanding).

6

Plaintiff's counsel admitted at the hearing held on January 28, 2026,

that Kuza never communicated with Plaintiff outside his role as

representative of the company.  *See S&S Innovations Corp. v. UUSI,*

*LLC*, No. 1:18-cv-1377, 2021 WL 2070064, 2021 U.S. Dist. LEXIS

97615, at *16 (W.D. Mich. May 24, 2021) ("Merely being in charge of a

company does not open the door to veil-piercing.").  The only contracts

or writings that have been shown to the court show communications

from Kuza only in his capacity as an employee or owner of Henry

Electric, LLC – for example, the offer of a refund appears on Henry

Electric letterhead.  Plaintiff's few allegations in his complaint

regarding possible alter ego status would only serve to illustrate

possible alter ego status between Henry Electric LLC and another

entity owned by Kuza, Box Design Group LLC.  *See* ECF No. 1,

PageID.4.  But even assuming that overlap exists between those two

entities, that does not necessarily lead to the conclusion that either

corporate veil may be pierced to reach Kuza himself, rather than to

reach the assets of Box Design Group (who is not named as a Defendant

here).  *See* S&S Innovations Corp., 2021 U.S. Dist. LEXIS 97615, at

*16-17 ("the lack of a formal distinction between THP and Nartron. . . .

does not mean there is a similar lack of distinction between Rautiola and Nartron.  Nartron is not a mere instrumentality of Rautiola simply because THP is.").

Therefore, motion is denied in its entirety as to Kuza and all claims as to Kevin Kuza will be dismissed without prejudice for failure to state a claim upon which relief can be granted.  The discussion below relates to Defendant Henry Electric only.

### B.    Default As to Liability Against Henry Electric

Because a default has been entered, all of Plaintiff's well-pleaded allegations, except those relating to damages, are deemed to be admitted.  However, the facts must still be "sufficient to support a finding of liability as to each defendant" as to each claim.  *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).  "In other words, the complaint must be able to survive a Rule 12(b)(6) motion to dismiss."  *Howard v. Dearborn Motors 1, LLC*, No. 17-12724, 2020 U.S. Dist. LEXIS 45175, at *9 (E.D. Mich. Mar. 16, 2020).

This case is before the court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and Plaintiff's claims are based entirely on state law.  The task of this court, sitting in diversity, is to apply the

8

same law as would be applied by the Michigan state courts.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  Where a state's highest court has spoken to an issue, this court is bound by that decision unless it is convinced that the high court would overrule it if confronted with facts similar to those before it.  *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 205 (1956).  Where a state appellate court has resolved an issue to which the high court has not spoken, federal courts should "treat [those] decisions . . . as authoritative absent a strong showing that the state's highest court would decide the issue differently."  *Garrett v. Akron-Cleveland Auto Rental, Inc. (In re Akron-Cleveland Auto Rental, Inc.)*, 921 F.2d 659, 662 (6th Cir. 1990).

1)    *Count I: Breach of Contract*

Plaintiff is entitled to default judgment on part of his breach of contract claim against Henry Electric.  Under Michigan law, a plaintiff establishes breach of contract by showing: (1) the existence of a valid contract; (2) the terms of the contract; (3) breach of those terms by the defendant; and (4) resulting damages.  *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178 (2014).  Plaintiff and Henry Electric entered into an agreement for the sale and delivery of a custom electric

9

bicycle in exchange for $7,700.00.  Defendant never delivered the

bicycle, and so breached the contract.  After some months of realizing

Defendant was in breach, Plaintiff requested a refund, which

Defendant, according to the Complaint's allegations, agreed to.  ECF

No. 1, PageID.3.  Upon breach of the contract (and an agreed upon

refund, which was in effect a rescission of the contract), Defendant owed

Plaintiff the original price of the bicycle.  Plaintiff is therefore entitled

to rescission of the original contract and to his original payment.  *See*

5A MI Civil Jur Contracts § 214 ("Rescission of a contract is available to

an injured party if the other has committed a substantial or material

breach"); *Lash v. Allstate Ins. Co.*, 210 Mich. App. 98, 102-03 (1995) ("To

rescind a contract is . . . to annul the contract and restore the parties to

the relative positions which they would have occupied if no such

contract had ever been made.") (citation omitted); *Mesh v. Citrin*, 299

Mich. 527, 537 (1941) ("In rescission he is entitled to the recovery of

what he has paid.").  That breach of contract, rescission, and associated

damages are each straightforward.

However, Plaintiff also alleges that part of the contract at issue

was a modification to a) repay $4,750 and b) add a $150-per-day fee to

that amount that acted as an enforceable "liquidated damages" provision to the contract.  ECF No. 5, PageID.22; ECF No. 18-1, PageID.84.  On this point, Plaintiff has not shown that he is entitled to default judgment.  Under Michigan law, contracts for the sale of goods are governed by the Uniform Commercial Code (the UCC).  Mich. Comp. Laws §§ 440.1101 *et seq.*; *MSSC, Inc. v. Airboss Flexible Prods. Co.*, 511 Mich. 176, 180 (2023).  The UCC contains a statute-of-frauds provision that governs which agreements must be in writing.  *Id.*; Mich. Comp. Laws § 440.2201(1).  The requirements of the statute of frauds section of the UCC must be satisfied if the contract as modified is within its provision.  *W. Cent. Packing, Inc. v. A. F. Murch Co.*, 109 Mich. App. 493, 505 (1981).  This alleged modification to a contract for a sale of goods was, according to Plaintiff, an offer to provide a refund check in the amount of $4,750.00, plus a $150 per day late fee, which falls within the statute of frauds.  The alleged modification is provided as an exhibit to the Complaint and is not (at least formally) signed by either party.  ECF No. 1-1, PageID.9.

11

Assuming, however, that there was a sufficient signed writing

from Henry Electric,[2] it still must satisfy the other elements of contract

formation to be enforceable.  The essential elements of a contract are

parties competent to contract, a proper subject matter, legal

consideration,[3] mutuality of agreement, and mutuality of obligation.

*McInerney v. Detroit Tr. Co.*, 279 Mich. 42, 46 (1937).  The alleged

modification lacks valid proof of acceptance, even taking Plaintiff's

---

[2] For purposes of this opinion, the court assumes that the offer for a refund and late fee was a sufficient signed writing by Defendant under the statute of frauds, even though it contains an unexecuted, blank signature block.  *See, e.g.*, *MFS & Co., LLC v. Cyltec, LLC*, No. 09-14063, 2011 LX 45778, at *17 (E.D. Mich. Oct. 6, 2011) ("the Purchase Order acknowledging the minimum purchase contract was issued by Caterpillar on Caterpillar letterhead, [so] it constitutes a writing signed by Caterpillar, the party against whom enforcement is sought.") (citing *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1185 (7th Cir. 1991) (holding that a memorandum confirming a contract on company letterhead satisfied both the writing and signature requirement of the statute of frauds); *Dow Chem. Co. v. GE*, No. 04-10275-BC, 2005 U.S. Dist. LEXIS 40866, at *67 (E.D. Mich. Aug. 4, 2005) ("an email generally is considered a sufficient signed writing.") (citing *Michigan Regional Council of Carpenters v. New Century Bancorp, Inc.,* 99 F. App'x 15, 22 (6th Cir. 2004)); *see also Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (regarding the importance of a blank signature block, noting that Texas courts have found "a signature block by itself is insufficient to establish the parties' intent to require signatures," but finding the agreement invalid because other evidence showed the parties intended only a signature to give it effect).

[3] There does not appear to be new consideration for this separate promise, but that is not fatal to this claim because an agreement to modify a contract for the sale of goods governed by the Uniform Commercial Code does not require new consideration.  *Gentherm, Inc. v. Sargent & Greenleaf, Inc.*, 797 F. Supp. 3d 755, 761 (E.D. Mich. 2025); Mich. Comp. Laws § 440.2209(1).  "A party's ability to modify an agreement is limited only by Article Two's general obligation of good faith."  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 145 (6th Cir. 1983) (citations omitted).

allegations in the complaint as true.  "Mutuality of agreement requires a valid offer and an acceptance."  *McMillon v. City of Kalamazoo*, 511 Mich. 855, 857 (2023) (citing Restatement (Second) of Contracts § 22 (1981)).  The sole evidence of acceptance is the following statement in Plaintiff's affidavit: "I accepted that proposal."  ECF No. 18-1, PageID.84.  But "[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."  *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (quoting *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998)); *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any [attached] exhibit . . . the exhibit prevails.")).  The refund "proposal" on its face appears to seek a signature to indicate acceptance; none exists.  *See* ECF No. 1-1, PageID.9.  Plaintiff admits that agreement was "not signed" (ECF No. 5-1, PageID.30), and there is no reply email or other writing indicating acceptance.[4]  Plaintiff would

---

[4] Plaintiff averred that "[w]hile the refund proposal was not signed, both Mr. Kuza and I referenced it and acknowledged its terms in subsequent email communications."  ECF No. 5-1, PageID.30.  But two problems exist with that.

have no reason to think that his silence in the face of this offer was sufficient for Defendant to infer assent to the offer. *See* Restatement (Second) of Contracts § 19(2) ("The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents."). While "[a]ssent to an offer may be indicated by acts as well as by words[,]" the general rule is that "silence alone will not constitute a valid acceptance." *Zurich Am. Ins. Co. v. Mack Indus.*, No. 14-cv-14244, 2015 LX 67753, at *6 (E.D. Mich. Dec. 8, 2015) (citing *Kvaerner U.S., Inc. v. Hakim Plast Co.*, 74 F. Supp. 2d 709, 714 (E.D. Mich. 1999), *Turner Associates, Inc. v. Small Parts, Inc.*, 59 F. Supp. 2d 674, 675, 681 (E.D. Mich. 1999)). Therefore, there was no valid acceptance and no contract formation.

But even assuming a valid contract was formed and acceptance was shown through communications not presented to the court, the court would not enforce this purported "liquidated damages" provision. A liquidated damages provision is an agreement by the parties fixing

---

First, referencing and acknowledging the terms of an offer is not the same as formally accepting the offer. Second, none of those emails were provided to the court, and the sole exhibit before the court shows no proof of acceptance.

the amount of damages in case of a breach.  *UAW-GM Human Res. Ctr.*

*v. KSL Rec. Corp.*, 228 Mich. App. 486, 508 (1998).  Whether such a

provision is valid and enforceable or invalid as a penalty is a question of

law.  *Id.*  Courts are to sustain such provisions if the amount is

"reasonable with relation to the possible injury suffered" and not

"unconscionable or excessive."  *Id.*  "[T]he court must determine

whether the predetermined figure is really in the nature of an

attempted computation of the actual damages likely to result, or

whether it has the effect of exacting a penalty from the contract

breaker."  *Nichols v Seaks*, 296 Mich. 154, 161 (1941).

Even leaving aside the question of treble damages Plaintiff sought

under other theories, Plaintiff is seeking to enforce a $125,850.00 late

fee on a $7,700 transaction.  That Defendant originally proposed that

number (at least for a limited time) makes no matter; it is excessive and

is not reasonable in relation to the possible injury suffered.  *See Shore*

*Fin. Servs. v. Lakeside Title & Escrow Agency*, Nos. 301143, 302707,

302723, 2013 Mich. App. LEXIS 875, at *12 (Ct. App. May 21, 2013)

($1,000 per day penalty found unenforceable because it "require[d] the

payment of the same sum regardless of the degree in the breaching

party's failure to perform . . . and the penalty amount is unreasonable and excessive" compared to the total contract cost of $180,000); *see also Willard Packaging Co. v. Javier*, 169 Md. App. 109, 124 (2006) ("liquidated damages provisions [are] unreasonable, or penalties, when the sum for damages is so disproportionate with provable damages 'as to require the inference that the agreement must have been effected by . . . mistake'").[5]  This proposal instead bears the hallmarks of an agreement that the Michigan Supreme Court has long warned would be unreasonable.  That Court posited that "where a large sum (say $1,000) is made payable solely in consequence of the nonpayment of a much smaller sum (say $100), . . . the principle of compensation has been overlooked, or purposely disregarded; . . . the parties have wholly departed from the idea of just compensation, and attempted to fix a rule of damages which the law will not recognize or enforce."  *See Curran v.*

---

[5] This 16x liquidated damages multiplier (or looked at from another angle, a 1.3% late fee incurred every single day) bears no similarity to those cases that find liquidated damages provisions reasonable.  *See UAW-GM Human Res. Ctr. v. KSL Rec. Corp.*, 228 Mich. App. 486, 508 (1998) (sixty-five percent of the contract cost upon cancellation reasonable within certain time); *Domestic Unif. Rental v. Bronson's*, No. 359297, 2023 WL 324103, 2023 Mich. App. LEXIS 447, at *10 (Ct. App. Jan. 19, 2023) (fifty percent of contract value reasonable in relation to injury suffered); *De Simone v. Barberio*, No. 351424, 2021 Mich. App. LEXIS 4071, at *14 (Ct. App. July 1, 2021) (2.5% late charge every 30 days reasonable).

*Williams*, 352 Mich. 278, 284 (1958).  Here, Plaintiff seeks to make a large sum (over $125,000) made payable solely in consequence of nonpayment of a much smaller sum ($7,700).  As *Curran* warned, the principle of reasonable compensation has been abandoned.[6]  To allow such an inordinate sum to accrue also reflects no attempt on Plaintiff's part to mitigate these alleged damages.  The court would not enforce the provision as written even had Plaintiff shown a contract was formed.

Therefore, no contract was formed as to the alleged refund proposal; even if it were, the court would find the liquidated damages provision unenforceable as an excessive penalty.  Plaintiff's motion is for default judgment is granted as to breach of contract for his original agreement for the custom bicycle; Plaintiff's motion is denied as to the alleged modification terms.

### 2)     *Count II: Statutory Conversion*

---

[6] Plaintiff's citation to *Anderson v. Detroit Police Officers*, 09-cv-11193, ECF No. 29, is inapposite.  That case imposed a $250 per day sanction for a three-month period (totaling approximately $7,500).  Not only was that sanction a fixed amount far below what is sought in this case, but that amount was entered against a $25,000 judgment and so did not reflect even a third of the original judgment value. Plaintiff here seeks more than 16 times the original contract value as a penalty.

17

To establish statutory conversion, a plaintiff must prove: (1) that the defendant wrongfully exerted dominion over property inconsistent with the plaintiff's rights; and (2) that the defendant did so to his or her "own use," meaning for a purpose personal to the defendant. *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 303 Mich. App. 441, 448–49 (2013), *aff'd in part, vacated in part on other grounds*, 497 Mich. 337 (2015).

Here, Plaintiff never paid any additional money over and above the original $7,700 contract.  Therefore, no conversion claim may lie as to the $150 per-day late fee proposal, because Defendant never exerted dominion over any of Plaintiff's property in relation to that proposal (i.e. there was no additional property allegedly converted).[7]  Meanwhile, the money paid under the original $7,700 contract is covered by the terms of the original express contract, and a conversion claim as to that money is barred by the economic loss doctrine.  *See Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 254 Mich. App. 372, 380 (2002) ("parties to a

---

[7] Perhaps Plaintiff's best argument against this conclusion is that the offer to modify the contract meant that the refund amount was for only $4,750, leaving $2,950 as converted property as to this second promise.  But in his complaint, Mannion seeks the full $7,700 for breach of contract, which forecloses that alternative argument.  ECF No. 1, PageID.5.

transaction for goods are precluded recovery in tort for economic loss" where "their economic expectations can be satisfied by contractual remedies."); *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 778 (E.D. Mich. 2014) ("The doctrine is animated by the idea that tort remedies should not bail out parties who could have anticipated losses caused by failed performance and negotiated an appropriate response."). While "tort claims are barred under the doctrine only where the duty alleged to have been violated by the defendant is implicated by the relevant contract[,]" the duty alleged here was one and the same as that implicated by the contract for the custom bicycle: to return the money paid under the contract after failure to perform. *See Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 582 (6th Cir. 2016); *e.g. 1-800 Bathtub, LLC v. Rebath, LLC*, No. 357932, 2024 Mich. App. LEXIS 3003, at *25, *24 n.8 (Ct. App. Apr. 18, 2024) (applying the doctrine to statutory conversion and collecting cases where courts found "no duty separate and distinct from the contractual obligation" in conversion claims); *see also Powers Paper, LLC v. Northstar Sourcing LLC*, No. 24-10731, 2025 LX 495108, at *6 n.1 (E.D. Mich. Oct. 16, 2025) (denying default judgment on conversion claim where plaintiff

19

also brought breach of contract claim because "the sale of goods is a consensual transfer of property that does not meet the definition of conversion under Michigan law.").

The motion is therefore denied as to Count II.

### 3)    *Count III: Fraudulent Misrepresentation*

Under Michigan law, fraudulent misrepresentation requires proof of: (1) a material representation by the defendant; (2) that was false; (3) knowledge of its falsity, or reckless disregard as to its truth; (4) intent that the plaintiff rely on it; (5) actual reliance by the plaintiff; and (6) resulting damage. *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 555 (2012).

The general rule is that claims of fraud where an express contract covers the same subject matter are barred by the economic loss doctrine. *See Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, 209 Mich. App. 365, 375 (1995). Plaintiff emphasizes that "[f]raudulent inducement is actionable alongside a contract claim when the fraud is extraneous to the contract or relates to a future promise made in bad faith." *See id.* at 372–73. But fraud in the inducement to form a contract (misrepresentations that induce the buyer to enter into a contract) is not the same as any fraudulent misrepresentation during

20

the contract (such as contract terms subsequently breached by the seller), and Plaintiff notably did not bring a claim for fraud in the inducement.  *See* ECF No. 1, PageID.6.  Plaintiff deemphasizes the contrary language in *Huron Tool* that, "[w]ith respect to the latter kind of fraud [fraudulent statements interwoven with the breach of contract], the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort."  *Id.* at 373.  Here, the only fraud alleged as to the original $7,700 is that "Defendants, through Kuza, repeatedly represented that a refund was imminent, via email, while failing to follow through."  ECF No. 1, PageID.6.  This failure to refund payment on a contract when Defendant failed to otherwise deliver the promised goods on the contract is indistinguishable from Plaintiff's breach of contract claim, because the duty to refund Plaintiff's money arose when Defendant materially breached the contract, and again when Plaintiff sought to rescind the contract by asking for a refund following that breach.  Recovery under a fraudulent misrepresentation theory for promising to refund this amount is therefore barred by the economic loss doctrine; the contractual claim and remedy subsumes it entirely.  *See, e.g.*, *MD*

21

*Holdings, LLC v. R. L. Deppmann Co.*, No. 357462, 2022 Mich. App.

LEXIS 6455, at *21 (Ct. App. Oct. 27, 2022) ("because the

misrepresentation claims alleged in Counts III, V, and VI do not allege

conduct extraneous to the contractual obligations, the trial court

properly dismissed the claims . . . on the basis that they were

indistinguishable from the contract claims.").

As to the promise to pay $150 per day the refund was late, that is

not barred by the economic loss doctrine because, as explained, no

contract was formed as to that promise, and so no contractual remedy

already covers that promise or fraud related to it.  Plaintiff has also

alleged that a) these statements were knowingly false or made with

reckless disregard for their truth, b) Plaintiff relied on these assurances

to his detriment in delaying legal action, and c) Plaintiff has suffered

financial loss as a result.  ECF No. 1, PageID.6.  Although these

allegations are fairly conclusory, in this procedural posture the court

accepts that this is sufficient to show materiality; Plaintiff refrained

from bringing legal action by relying on the truth of the promise that a

refund was shortly coming.  However, while Plaintiff has sufficiently

alleged that he did in fact rely on the promise of a $150 late fee to delay

bringing legal action, his reliance must still have been reasonable.  *See*

*Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 690 (1999)

(surveying Michigan cases and holding that "a person who *unreasonably*

relies on false statements should not be entitled to damages for

misrepresentation") (emphasis in original); *MacDonald v. Thomas M.*

*Cooley Law Sch.*, 724 F.3d 654, 662-63 (6th Cir. 2013) (applying

Michigan law, holding that a plaintiff's "reliance on the alleged

misrepresentation must have been reasonable").  While the court

accepts that there may have been some period of time that Plaintiff

could have reasonably relied on Defendant's statements, such reliance

would have become unreasonable very quickly.  After only one week, the

proposed "late fees" of $150 per day would have totaled over $1,000 –

still without any refund being issued at all, partial or otherwise.  After

only a month, the "late fees" would have outstripped the total proposed

refund amount, still without any word of any payment.  The decision to

rely on that promise, to continue waiting for payment, and to believe

that "late fees" of $150 per day were still stacking up, likely could not,

at either point, be considered reasonable – particularly when Plaintiff

had already not received any portion of a promised refund for about seven months after first requesting it.

Finally, even accepting that Plaintiff met the other elements of fraudulent misrepresentation for at least a short period, while Plaintiff undoubtedly suffered financial loss by the delay in receiving a refund, his actual damages are not and were not $150 per day. The recipient of a fraudulent misrepresentation is entitled to recover (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and (b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation. Restatement (Second) of Torts § 549; *see, e.g.*, *McCallum v. M 97 Auto Dealer, Inc.*, No. 367630, 2025 Mich. App. LEXIS 7915, 2025 WL 2784922, at *19 (Sep. 30, 2025) (using that definition). The first of those potential remedies is, in this case, only applicable to the $7,700 that is covered by the express contract at issue in this case and is barred by the economic loss doctrine. As to the second, it speaks to compensatory damages, which are merely what is necessary to make a Plaintiff whole, as if the contract had been honored (or here, the rescission and full refund honored). Plaintiff suffered no

24

pecuniary loss by the promise of a daily late fee that was not honored, because Plaintiff never paid any consideration for that promise. Instead, in this case reasonable interest on the original contract price is the proper measure of consequential damages, not an invented number that has no relation to Plaintiff's actual daily costs. *See McDaniel v. Macomb Co. Bd. of Rd. Comm'rs*, 169 Mich. App. 474, 477 (1988) (courts may grant "an award of prejudgment interest [] 'to compensate the prevailing party for the expenses incurred in bringing an action and for the delay in receiving money damages.'"). That remedy, too, is adequately captured by the contractual remedy, and so no further recovery is necessary.

The motion for default judgment is therefore granted in part as to liability under Count III, but Plaintiff's actual damages are entirely duplicative of his contract claim, thus no damages will be awarded under this claim.

### 4)   Count IV: Promissory Estoppel

To establish promissory estoppel under Michigan law, a plaintiff must show: (1) a promise; (2) that the promisor should reasonably have expected to induce action or forbearance; (3) that the promise did in fact

induce such action or forbearance; and (4) that enforcement of the promise is necessary to avoid injustice. *State Bank of Standish v. Curry*, 442 Mich. 76, 84–85 (1993). Plaintiff says that Defendant made a clear and definite promise to refund $4,750.00 to Plaintiff by April 25, 2023, and to pay $150.00 per day for each day the refund was late. Plaintiff also claims that Defendant should have reasonably expected that this promise would induce Plaintiff to refrain from immediately pursuing litigation or other remedies, which, according to Plaintiff, it did. Plaintiff alleges that he relied on this promise by delaying suit.

First, as to the original $7,700 and any partial refund of that amount, the express contract and breach of contract covering that matter bars any equitable claim as to that amount. *See Scholz v. Montgomery Ward & Co, Inc.*, 437 Mich 83, 93 (1991) (explaining that "[a]n implied contract cannot be enforced where the parties have made an express contract covering the same subject matter"); *Zwiker v. Lake Superior State Univ.*, 340 Mich. App. 448, 482-483 (2022) (holding that the plaintiffs' implied-contract theory failed because the express written agreements between the parties governed the same subject matter as the equitable claims). Thus any equitable claim here must rest solely

26

on Defendant's promise to pay a $150 per-day late fee; the $4,750 proposed refund is immaterial because that claim is subsumed by the express contract for the bicycle.

As to the $150 per-day late fee, the court jumps straight to the final and most important factor for this case: whether enforcement of that promise is necessary to avoid injustice. The court finds that it is not; even taking as a given the questionable premise that Plaintiff could have *reasonably* relied on a promise to pay a $150-per-day late fee, which had racked up, according to him, over $100,000 on a $7,700 contract before he filed suit,[8] enforcement of that late fee is not necessary to avoid injustice. While Plaintiff alleges that Defendant's promise did in fact induce his forbearance in filing suit, the fact is that nothing in Defendant's promise to add a late fee to the refund check (if they paid at all) actually prevented Plaintiff from bringing this action for breach of contract before May 2025. Defendant's refund proposal

---

[8] As in fraudulent misrepresentation, the reliance interest protected by a promissory estoppel claim is *reasonable* reliance. *State Bank of Standish v. Curry*, 442 Mich. 76, 84 (1993). The court has explained why, even accepting Plaintiff's allegations as true, as a matter of law it is likely that no person could have "reasonably" relied on a promise, unsupported by any explicit consideration, to pay a late fee of $150-per-day on a proposed $4,750 refund after weeks passed with no payment and where the promised refund had already been outstanding for seven months.

said only that "If the check i[s] not received by this date, there will be a

charge to Henry Electric of $150 per day until payment is received.

Once payment is received [Plaintiff] will sign the document and the

waiver in the envelope and conceded that this matter is now closed."

ECF No. 1-1, PageID.9.  That statement imposes no obligation on

Plaintiff in exchange for the $150 per day charge prior to payment; it

seeks some sort of release after payment is made but does not say, for

example, that Plaintiff will promise to agree to refrain from filing suit

for breach of contract until payment is received.  Granted, Plaintiff's

affidavit, which was submitted with his response to a show cause order,

says he took the promise as an effort to avoid litigation.  *See* ECF No. 5-

1, PageID.31 ("I understood the $150/day to represent compensation for

the delay.  I viewed it as a way to avoid further conflict and litigation.").

But that affidavit is not sufficient to overcome the plain terms of the

alleged promise itself.  When a "written instrument contradicts

allegations in the complaint to which it is attached, the exhibit trumps

the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536

(6th Cir. 2017) (citing *Williams v. CitiMortgage, Inc.*, 498 F. App'x. 532,

536 (6th Cir. 2012)).  And as explained, no binding contract was formed

as to that $150-per-day promise and there was no legal limitation in fact on Plaintiff's ability to file suit.

Thus, Plaintiff could have filed this action at any time after Defendant breached the contract, or again after they acknowledged his refund request in August 2022 (but did not pay it), and Plaintiff could again have filed this action after Defendant proposed a late fee in March 2023 (about seven months after requesting a refund in the first place). Plaintiff has alleged a straightforward breach of contract on his original $7,700 bike, and to compensate him the court can order the return of his money plus reasonable interest over the intervening years, and that result is not unjust.

The motion for default judgment as to Count IV is therefore denied.

### 5)   *Count V: Michigan Consumer Protection Act*

The Michigan Consumer Protection Act ("MCPA") prohibits a variety of unfair, unconscionable, and deceptive trade practices in the conduct of trade or commerce. Although Plaintiff cites Mich. Comp. Laws § 445.903(1)(c), (e), and (n) for relevant provisions, the court finds only the first two applicable to this case. Section (c) prohibits

29

"[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have." Section (e) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Section (n) prohibits "[c]ausing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction."

As to section (c), the exhibit attached to the complaint fairly indicates that Defendant ceased making custom bikes of the type Plaintiff wanted, and therefore Defendant did not have the "quantity" of the type of bicycles they said, because they had none. ECF No. 1-1, PageID.9. As to section (e), Defendant had represented that the bike would be fully custom (of some sort), but moving forward, they instead planned to make a line of bicycles labelled "Henry Electric Bikes" with custom options, which is sufficient to establish in this posture that the goods actually on offer were of a different "style or model" than originally advertised. *Id.* These are, perhaps, a stretch, but as a

30

remedial statute meant to prohibit unfair practices in trade or commerce, the MCPA is to be liberally construed to advance its intended goals. *Brownlow v. McCall Enterprises, Inc.*, 315 Mich App 103, 125 (2016).[9]  Defendant's conduct constituted an unfair and deceptive act under the MCPA.

There was not, however, a violation of the MCPA in promising a late fee of $150 per day as to the refund.  Although Plaintiff alleges that he refrained from filing suit on the basis of the promise of this late fee, there is no allegation or evidence that Plaintiff actually misunderstood or was confused about his legal rights as to his contract with Defendants.  *See* Mich. Comp. Laws § 445.903(1)(n).  Nor does the

---

[9] Plaintiff also cited the MCPA as prohibiting "failing to provide goods or services promised after accepting payment[.]"  ECF No. 18, PageID.75.  While no specific provision uses that particular phrasing, and none of Plaintiff's cited sections ((c), (e), and (n)) make that point, sections (q) and (u) appear to make similar points. Section (q) prohibits "[r]epresenting or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided." Section (u) prohibits "[f]ailing, in a consumer transaction that is rescinded, . . . to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, . . . ."  Plaintiff alleged that "Defendants made representations they did not intend to honor and accepted payment" for goods they did not intend to deliver within a reasonable time, and by defaulting, Henry Electric admitted that allegation.  ECF No. 1, PageID.7.  Plaintiff also alleged that he sought a refund in August 2022 and that Defendants agreed to that refund, in effect rescinding the contract, but Plaintiff was never paid that refund.  ECF No. 1, PageID.3.  Plaintiff did not plead these specific provisions and so the court does not ultimately consider them, but they would otherwise provide for recovery under the MCPA.

promise to pay a late fee facially include any sort of misrepresentation regarding Plaintiff's rights that might give rise to reasonable probability of misunderstanding or confusion; as pointed out previously, the promise merely states what Defendants offered to do, and does not by its terms impose any reciprocal obligation on Plaintiff until and unless payment was received, and in that Defendant simply sought some sort of release once the matter was closed.  *See* ECF No. 1-1, PageID.9.

The motion for default judgment is therefore granted in part on the MCPA claim as to the original $7,700 bicycle, but denied as to the $150 per-day late fee.

## C.    Remedies

Having determined that Plaintiff is entitled to default judgment against Defendants for breach of contract, fraudulent misrepresentation, and violation of the MCPA, the court now turns to the issue of appropriate remedies for Plaintiff.

Well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, but not as to damages.  *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).

32

"[W]here the damages sought are not for a sum certain, the Court must determine the propriety and amount of the default judgment." *J & J Sports Prods., Inc. v. Rodriguez*, No. 08-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (citing Fed. R. Civ. P. 55(b)). Rule 55(b)(2) permits, but does not require, the district court to conduct an evidentiary hearing to determine damages. *Arthur v. Robert James & Assoc. Asset Mgmt., Inc.*, No. 11-460, 2012 WL 1122892, at *1 (S.D. Ohio 2012) (citing *Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir. 2009)).

### 1)   Plaintiff's Compensatory Damages

Here, the actual damages for the breach of contract claim are for a sum certain; Plaintiff paid $7,700 for an electric bicycle that was never delivered. He is entitled to that entire amount due to Defendant's breach. Meanwhile, actual damages established under his MCPA claim (Mich. Comp. Laws § 445.911(2)) are subsumed by those in Plaintiff's breach of contract claim, and so no actual damages will be awarded under that claim.

### 2)   Prefiling interest

33

Michigan law has long recognized the common law rule that interest may be awarded as an element of damages in a contract or tort action to compensate for the lost use of funds. *Jones v. Lothamer*, 819 F. Supp. 1382, 1383 (W.D. Mich. 1993). Courts have generally employed the 5% interest rate set by Mich. Comp. Laws § 438.31 when awarding prefiling prejudgment interest. *See, e.g., Gordon Sel-Way, Inc. v. Spence Bros., Inc.*, 438 Mich. 488, 505 (1991) ("This Court, several panels of the Court of Appeals, and federal courts interpreting Michigan law have consistently filled the interest rate gap in MCL 438.7 . . . by incorporating the 'legal rate' provided under MCL 438.31.") (citing cases); *Holland v. Earl G. Graves Publ'g Co.*, 33 F. Supp. 2d 581, 584 (E.D. Mich. 1998) ("Michigan courts have determined that the appropriate pre-filing rate of interest is 5%"). Therefore, the court will award 5% prejudgment interest on Plaintiff's breach of contract claim, beginning May 7, 2022 (the date of Plaintiff's original payment) and ending May 7, 2025, the date this action was filed, which totals $1,155.00. Some portion of this amount would also be appropriate to award as actual compensatory damages under Plaintiff's fraudulent misrepresentation claim, representing the time after the refund

proposal was made, but because Plaintiff is not entitled to duplicative recovery, no damages will be awarded under the fraudulent misrepresentation claim.

      3)   *Attorney Fees*

Plaintiff is entitled to recover reasonable attorney's fees upon prevailing on an MCPA claim. Mich. Comp. Laws § 445.911(2). Determining a reasonable fee begins with calculating the product of a "reasonable hourly rate" and the "number of hours reasonably expended on the litigation," known as the "lodestar" amount. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (noting that the court may adjust the fee based upon the circumstances of the case, including the "results obtained"); *Kennedy v. Robert Lee Auto Sales*, 313 Mich. App. 277, 300-01 (2015) (applying this framework in the context of the MCPA). Applying state law, the court should also consider the factors listed in Michigan Rule of Professional Conduct 1.5(a). *Jordan v. Transnational Motors*, 212 Mich. App. 94, 97 (1995).[10] "The key requirement for an

---

[10] In this context, the court should also consider "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal

award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). District courts are required to give a clear explanation for its award calculation (for example, which hours it is rejecting, which it is accepting, and why). *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004). But in calculating a reasonable fee, "district courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply to do 'rough justice.'" *The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). In other words, the court may rely estimates based upon its "overall sense of a suit." *Id.*

First, the court agrees that the hourly rate for each staff member listed is reasonable. $125 per hour for a paralegal-like staff member is

---

services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." *Smith v. Khouri*, 481 Mich. 519, 530 (2008); *Kennedy*, 313 Mich. App. at 303.

reasonable, as is a $250 per hour rate for a staff member with a J.D.
However, the court reduces Plaintiff's counsel's requested $550 hourly
rate slightly.  In general, "the 'prevailing market rate' is that rate which
lawyers of comparable skill and experience can reasonably expect to
command within the venue of the court of record." *Adcock–Ladd v.
Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000).  "District
courts have relied on the State Bar of Michigan [] Economics of Law
Practice Survey to determine average billing rates in Michigan[.]"
*O'Connor v. Trans. Union, LLC.*, No. 05-cv-74498, 2008 WL 4910670 at
*5 (E.D. Mich. Nov. 13, 2008).  Most relevant to this case, the mean, 75th
percentile, and 95th percentile for hourly rates for Michigan contracts
lawyers in 2023 was $348, $450, and $600, respectively.  For Plaintiff's
counsel's geographic area of Oakland County, the rates were $354,
$425, and $600, respectively.  And for attorneys with 16-25 years of
experience, hourly rates were $337, $425, and $600, respectively.
Plaintiff's attorney has been practicing for 17 years.  After reviewing
the Survey and the circumstances of this case, the court will reduce
Plaintiff's counsel's hourly rate to $425 given the relative lack of
complexity of the issues presented.  Because the court calculated

Plaintiff's counsel's hours to be 10.6 of the total hours requested, only that amount of hours is recalculated.  This results in a new total of $6,955 in attorney fees.

Second, the court finds that the time spent on this case was reasonable, but reduces the recovery based on the results of this motion. When determining the reasonable number of hours worked, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).  The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.  To carry the burden, attorneys must maintain time records detailed enough to enable courts to review the reasonableness of the hours expended. *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001).  Courts then review the billing claims and exclude "[e]xcessive, redundant, or otherwise unnecessary hours." *Butcher v. Bryson*, No.

38

3:12–00251, 2014 WL 4385876, at *3 (M.D. Tenn. Sept. 5, 2014) (citing

*Hensley*, 461 U.S. at 434).  Plaintiff's counsel submitted an itemized

invoice of the hours billed, both by counsel herself and by other staff in

her office.  *See* ECF No. 20 (bill of costs).  After reviewing the invoice,

the court finds that the hours Plaintiff's counsel and staff billed for this

case (27.3 hours) does not reflect an unreasonable time spent pursuing

these claims, and the individual entries appear reasonable.  However,

Plaintiff did not succeed on each of her claims; the court must also

consider the "amount involved [in the case] and the results obtained[.]"

*Smith v. Khouri*, 481 Mich. 519, 530 (2008).  One of Plaintiff's claims

that was denied in this order, promissory estoppel, was merely an

alternative to the breach of contract claim, so the court does not find a

need to reduce any hours from lack of success on that claim.  But the

statutory conversion claim was fairly central to Plaintiff's presentation,

was the sole basis for the majority of the damages that she sought, and

the court did not find that claim to have merit.  So the court will reduce

the total recovery of attorney fees by 20% to reflect an approximate time

spent on the conversion theory alone.

This brings Plaintiff's reasonable attorney fees to $5,564.

39

### 4)   Costs

A party is not entitled to an award of attorney fees and costs unless such an award is expressly authorized by statute or court rule. *Haliw v. Sterling Hts.*, 471 Mich. 700, 707 (2005).  "[U]nder the plain language of MCL 445.911, plaintiffs are entitled to recover reasonable attorney fees[,]" but "the MCPA does not address costs[.]" *See Lavene v. Volkswagen of Am., Inc.*, 266 Mich. App. 470, 477 (2005). This seems a conspicuous omission when compared to similar statutory provisions.  *Compare* Mich. Comp. Laws § 455.911(2) ("reasonable attorney fees."), *with* § 600.2591 ("costs and fees"); § 445.257 (shall award reasonable attorney's fees and court costs).  Given the lack of explicit authorization by statute for an award of costs, the court will not award Plaintiff's requested costs.

### 5)   Prejudgment interest

The awarding of prejudgment interest in diversity cases is controlled by state law.  *See American Anodco, Inc. v. Reynolds Metal Co.*, 743 F.2d 417, 425 (6th Cir. 1984).  The awarding of prejudgment interest dating from the filing of a complaint in a successful civil action is mandatory under Michigan law.  *Thorn Apple Valley v. Allianz Life*

*Ins. Co.*, No. 94-1841, 1995 U.S. App. LEXIS 37063, at *15 (6th Cir.

Nov. 29, 1995).  Under Mich. Comp. Laws § 600.6013, interest shall be

allowed on a money judgment in any civil action and is deemed to have

begun accruing on the date the complaint was filed.  *Jones*, 819 F. Supp.

at 1383.  Under that provision, "for complaints filed on or after January

1, 1987, interest on a money judgment recovered in a civil action is

calculated at 6-month intervals from the date of filing the complaint at

a rate of interest equal to 1% plus the average interest rate paid at

auctions of 5-year United States treasury notes during the 6 months

immediately preceding July 1 and January 1, as certified by the state

treasurer, and compounded annually, according to this section.  Interest

under this subsection is calculated on the entire amount of the money

judgment, including attorney fees and other costs."  Mich. Comp. Laws

§ 600.6013(8).  However, "prejudgment interest pursuant to MCL

600.6013; . . . [can]not be assessed on attorney fees awarded under the

MCPA."  *Smolen v. Dahlmann Apartments, Ltd.*, 186 Mich. App. 292,

299 (1990).

   In this case, the principal amount becomes $8,855.00 (including

pre-filing interest but excluding attorney fees).  Since filing this case on

May 7, 2025, the interest totals $324.62, calculated as the sum of the following:

- From May 7, 2025 to June 30, 2025: $65.71

- From July 1, 2025 to December 15, 2025: $225.67

- From January 1, 2026 to January 29, 2026: $33.24.

## V.    SUBJECT MATTER JURISDICTION

One final issue of note: this court's subject matter jurisdiction. Plaintiff is a citizen of Montana; Defendants are citizens of Michigan. ECF No. 1, PageID.2.  This case arises out of diversity jurisdiction, and this court previously questioned Plaintiff's proposed recovery and whether it truly met the jurisdictional prerequisite that the amount in controversy exceeds $75,000.  ECF No. 4, PageID.16 (show cause order). In evaluating the jurisdictional threshold, "[a] district court should consider the amount alleged in a complaint and should not dismiss a complaint for lack of subject matter jurisdiction 'unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount'" at the time the complaint was filed.  *See Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) (quoting *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990)

(emphasis added)).  Even considering attorney fees under the MCPA, this case seemed not to get over the necessary threshold on initial review.  *See id.*; *see also Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 630 n.5 (6th Cir. 2009) ("[R]easonable attorney fees, when mandated or allowed by statute, may be included in the amount in controversy for purposes of diversity jurisdiction.").

Here, there is a close question as to whether this case should be dismissed for lack of subject matter jurisdiction rather than resolved as a default judgment in Plaintiff's favor.  The economic loss doctrine barred, as a legal certainty, his statutory conversion claim.  *See Floyd Cty. Mut. Ins. Ass'n v. CNH Indus. Am. LLC*, 18 F.4th 1024, 1029 (8th Cir. 2021) (affirming dismissal for failure to meet the jurisdictional threshold when district court found economic loss doctrine barred relief).  The resulting loss of recovery on the conversion claim is important because it renders Plaintiff's claim for treble damages against the $7,700 contract impossible as a legal certainty.  *See* ECF No. 1, PageID.6 (treble damages only sought under statutory conversion).  As to the $150 per-day late fee, which makes up the bulk of Plaintiff's jurisdictional amount, no property was converted and the

43

breach of contract claim rested mainly on Plaintiff's allegation that he "accepted" the offer (but with no proof of such), and the reasonableness of that liquidated damages provision.  While the MCPA could be read to have a provision that speaks to a fraudulent promise to provide a refund with a fee for each day late,[11] recovery is limited under that statute to actual damages, and as explained, Plaintiff was not damaged by that promise except as to a delay in bringing this suit.  That decision was also, however, attributable to his own decision-making because no legal obligation in fact barred this suit.

However, although the court here awards Plaintiff an amount significantly below what was originally sought, and the result is below the jurisdictional threshold, the court ultimately finds that given Defendants' representations regarding a $150 per-day late fee, Plaintiff could "in good faith" claim the jurisdictional amount and attempt his theory of recovery for breach of contract, fraudulent misrepresentation, or promissory estoppel, even if he did not ultimately recover on those theories.  Those claims, at least, rested on the assertion of the

---

[11] *See* Mich. Comp. Laws § 445.903(1)(q) ("Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided").

44

reasonableness of the alleged liquidated damages provision and the reasonableness of reliance on the promise to pay a late fee, and could be asserted in good faith even if the court now disagrees. *See Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction."); *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 38 n.8 (2025) ("this Court has viewed [the statutory amount-in-controversy threshold] as analogous to the time-of-filing rule applying to citizenship, which also assesses a factual issue relevant to jurisdiction only at the suit's outset"); *Conder v. Best Value Inc.*, 2008 U.S. Dist. LEXIS 82178 (W.D. Ky. Oct. 15, 2008) ("[P]ost-removal events reducing the amount recoverable below the jurisdictional minimum, . . . do not oust the District Court's jurisdiction once it has attached."); *Nokes v. Petsmart, Inc.*, No. 1:09-cv-00194, 2009 U.S. Dist. LEXIS 142890, at *5-6 (N.D. Ohio Apr. 23, 2009) (same).

## VI.   CONCLUSION

For the reasons stated above, the court (1) **GRANTS** the motion for default judgment with respect to Counts I, III, and V **IN PART** and

against Henry Electric, LLC only; (2) **DENIES** the motion as to all counts against Kevin Kuza and as to Counts II and IV against all Defendants; (3) **DISMISSES** Kuza from this case without prejudice; and (4) **AWARDS** damages, fees, and costs as follows: $9,179.62 in compensatory damages on Plaintiff's breach of contract claim (including prefiling and pre-judgment interest), and $5,564 in attorney fees, against Henry Electric, LLC.  Post-judgment interest will accrue as permitted by law.  *See* 28 U.S.C. § 1961.

An order of judgment will follow.

**SO ORDERED**.

Date: January 29, 2026                    s/F. Kay Behm
                                          F. Kay Behm
                                          United States District Judge